322-0394 Debbie Hill, Diane Kilcoyne, and Keith Marcano, Appellants v. Sherry Brinkman, Trustee of the Marcano Family Trust, appellee. Mr. Hoster, you may proceed. Thank you, Justice Holdredge. My name is Scott Hoster. I represent the three plaintiffs, the plaintiff's appellants. The defendant is their sibling. I did not request oral argument in this case, Ms. Gorkowski did, and I will really be short and straightforward because I've said it all in the brief. Their parents established a family trust. There are four kids, three of them are my clients, one of them are Ms. Gorkowski's client. The parents got elderly. They lived with Ms. Gorkowski's client, Sherry Brinkman, in her home. With their consent, and all four siblings knew this, Ms. Brinkman got $900 a month rent from her parents and $300 a week for caring for them. Her dad, William, their dad died December 16th of 17. The mother, Beverly, died December 26th of 19. Sherry, the defendant, became the trustee when her dad died on December 16th of 2017. They had a trust, Article 1, Paragraph D had a specific provision in the trust that if she quits her job and provides full-time care for her parents, she would receive $50,000 a year as a gift. There is a general powers provision in the trust that allows the trustee, who is Ms. Brinkman, to sell property, to borrow, to invest, to distribute property, all the boilerplate trustee language that you get in a trust. It was there for her. The only specific provision was the provision that allowed her a $50,000 a year gift if, in fact, she quit her job and provided full-time care. She chose not to do that. She worked full-time, and then five days before her mother died, which was on December 21st of 19, five days before her mother died, she wrote herself 12 checks that total approximately $70,000 for providing not trustee fees, but personal health care services for the year 2018. We then demanded an accounting. We were given no information. A few days before we filed this lawsuit to get an accounting, on April 25th of 2020, about five months after her mother died, she wrote herself 12 checks approximating about $60,000, $70,000 for 2019 care. Our belief is that, and we've cited cases, this is a clear conflict of interest. We've given you five or six cases that say a trustee is not allowed to self-deal. The cases I've cited are from various courts where you can't, a trustee can't sell him or herself property, can't lease him or herself farmland. You're just not allowed to deal, self-deal when you're a trustee. The crux of this is my opponents claim that the general powers clause in the trustee boilerplate language that says you can buy or sell property, borrow, invest, you can hire health care for us. They say that that general clause gives her the authority to hire herself, charge her own rates, pay herself whenever she wants. We say no. The only specific provision that waived the conflict of interest in the trust was if you quit your job and work and care for us full-time, you get a $50,000 a year gift. We have said you cannot self-deal. That's really the gist of the case, justices. It's all in the brief and that's it. We believe she's been guilty of self-dealing. Summary judgment motions, it's a de novo standard of review. We presented all of this to Judge Anderson. He felt that she was entitled under that article to the general powers provision to hire herself. We respectfully disagree with that because it is a complete, pure conflict of interest that has not been waived by the terms of the trust. Thank you very much, justices. If you have any questions, I will do my best to answer them. Any questions? Not at this point. None. Okay. Thank you, Mr. Hoster. Ms. Gorkowski, you may respond. Good morning, justices. May it please the court. The plaintiffs haven't cited any authority that prevents a court from enforcing the provisions of the trust at issue here. Paragraph 4M permits the trustee to employ during their lives any person or persons to companionship and medical care. So, the provision of the trust that allows the trustee to hire any person necessarily would include herself. If the intention was that she couldn't, it would have just been easy to say, but not herself, and that's not what the provision says. And so, we construe a trust as written, and the meaning is determined from the language of the trust as a matter of law. Plaintiffs cite Lampke as holding that a trust, trustee cannot be compensated for personal services. That's not the holding of Lampke. Lampke distinguished between trust services and personal services provided by the trustee and said that the trustee was entitled to trust services, but because the trustee only sought in her petition compensation for services rendered to the trust, and that's what she sought in her notice of appeal, they found that she didn't preserve her claim for personal services. The headnote in that case is wrong, and the case only holds that she's not entitled to personal services, be paid for personal services, because she didn't seek them in her petition. So, the trustee's powers are determined from the language of the trust, and in the absence of any case law or otherwise prohibiting the effect of paragraph 4M, the trust should be enforced as written. Hackett explains that there the trustee, that was an estate, there the executor sought to be paid for legal services that the executor provided to the estate. In Hackett, the court found that it was reversible error to deny the executor compensation for legal services. The court, Hackett, it's a 1977 case, it notes that in Willard, which is an 1861 case, the thinking was in the past that if the executor decided to provide services beyond executor services, that those wouldn't be compensated. They would be gratuitous because of the benevolence of the executor, but Hackett notes that that's not the case anymore, and held that the executor was entitled to reasonable compensation for all services provided, legal and non-legal. So, those legal services were not executor services, and here the trust should be enforced as written. Counsel states that, well, under our interpretation, the trustee could pay herself whatever she wanted and do whatever she wants with the estate. That's not our position. The limitation on the cases that allow a party, a trustee, to recover compensation for services, it has to be, the compensation has to be reasonable. Judge Anderson specifically held that the compensation was reasonable, and plaintiffs haven't challenged whether the amount of compensation was reasonable on appeal. And so, under, as we cite in our brief, under the restatement third of trust, a trustee So, reasonableness was never before Judge Anderson? Judge Anderson found it was reasonable. We argued it was reasonable. Oh, you did? We argued it was reasonable, and he, in his order, said that the amount of compensation was reasonable, and that hasn't been raised before this court by the plaintiffs. So, according to the restatement of trust, which cites Hackett, the one I was talking about, the trustee is entitled to extra compensation for extra services. So, there's nothing barring such a provision that's in the trust, and it should be enforced as written in accord with the settler's intent. So, the summary judgment should be affirmed. Questions from the court? I don't have any. Hearing none. Thank you, Ms. Korkowski. Thank you. Mr. Hoster, you have five minutes in reply. Thank you, Justice Aldridge. Again, if it pleases the court, Ms. Korkowski, the statement that we have not cited any cases is simply incorrect. In the summary judgment motion, and in my brief, a state of Hawley, 183 Illap 3rd, 107, a trustee cannot deal with a trust in an individual capacity, Gleason v. Black, 5 Illap 2nd, 61, a trustee cannot lease property to his son, a state of Hawley, 183 Illap 3rd, 107, a trustee cannot sell property to himself, Continental Illinois Bank v. Kelly, 33 Illap, 119, in Ray, the matter of the estate of Muparapu, 359 Illap 3rd, 925. And then, the estate of Allison, I cited in my reply brief, 140 Illap 3rd, 183, a trustee is not allowed to profit from a self-interested transaction, a trustee cannot serve as a landlord and tenant of a farm. So, I've given this court five or six cases that show trustees can't self-deal. Those cases all cite Bogart on trusts, which we probably all read in law school, the classic porn book about self-dealing about trusts. Ms. Gorkowski cites the Saperstein-Hackett case. That's the Harlem Globetrotter case. There, what happened was what happened a lot in the old days.  You don't see that that much anymore. But the question in that case was, could the lawyer take an executor fee as executor of the estate for executor services and take a legal fee for legal fees that the attorney performed? The court said yes, because a lawyer has a law license. And that lawyer submitted a fee petition to the probate court and got it approved. Here, this lady was her own boss, took money out after her parents were gone, and never got anything approved by the court, didn't even tell her sibling she was doing it. So, the case that Ms. Gorkowski has cited is not on point because that deals with the unique situation in the old days when a lawyer oftentimes served as executor of an estate and they were allowed to collect as an attorney and as an executor. Lastly, the issue of reasonableness, I would just like to address. It's hard to prove a negative. Ms. Gorkowski's client hired herself. She recorded all of her hours. She set her own rates. And if you look during the deposition, I asked her, she charged her parents for when she was sleeping. She billed them for when she was sleeping. I said, how can you bill them for when you're sleeping? And she said, well, you know those monitors that you have when you have babies? You put it in the baby's room and you turn the monitor on in the bedroom so the parents can hear when the baby's crying and needs to be fed. We did that with my parents. We put a monitor in their room and put a monitor in the bedroom. And that's why I was able to bill her when I was asleep. So, the question, again, there's an inherent conflict of interest here. How can we challenge the reasonableness of the fees? Because she said, I spent 24 hours today doing this. I feed her clothes. They had the pens on. I changed them. We're not in the house. We don't know what's going on. That's why you can't do this because there's a conflict of interest. And the other beneficiaries have no way to, you know, you can't prove a negative. I mean, can we prove she didn't do what she said? No, we can't prove that. But the problem is she shouldn't be doing it in the first place because there is an inherent conflict of interest. And we did cite five or six cases that say that. Thank you, Justices. I see the light flashing, and I'm done, I guess. Thank you, Paul. Any questions from the court? I do not. No? Okay. Well, thank you, Mr. Hoster and Ms. Gorkowski, for your arguments in this matter this morning. It will be taken under advisement. A written disposition, if shall, issue.